IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANDY SHIPES,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 1:21-cv-80-SMD
                                        )
KILOLO KIJAKAZI,                        )
*Acting Commissioner of Social Security*,[1] )
                                        )
        Defendant.                      )

## **OPINION & ORDER**

Plaintiff Brandy Shipes ("Shipes") filed for a period of disability and Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental

Security Income ("SSI") under Title XVI, on September 30, 2019, and April 16, 2020,

respectively. She alleged disability beginning July 6, 2019. Shipes's application was denied

at the initial administrative level, and she received an unfavorable decision after a hearing

before an Administrative Law Judge ("ALJ"). Shipes appealed the ALJ's decision to the

Social Security Appeals Council, which concluded that there was no basis for changing the

ALJ's decision. Consequently, the ALJ's decision became the final decision of the

Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Shipes now appeals that decision under 42

U.S.C. § 405(g). For the reasons that follow, the undersigned affirms the Commissioner's

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew
Saul as Defendant in his official capacity in this action under Federal Rule of Civil Procedure 25(d)(1).

decision.[2]

## I.      STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 9); Def.'s Consent (Doc. 10).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[4] ("Grids") or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[6]

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.  ADMINISTRATIVE PROCEEDINGS

Shipes, who was thirty-five years old at the time of her alleged onset date, has two years of college education and past work experience as a cook helper, bookkeeper, and tax preparer. Tr. 27, 114, 257-58. She alleged disability due to bipolar disorder, epilepsy, abuse as a child and adult, fibromyalgia, dysautonomia, Chiari I Malformation, PTSD, depressive disorder, and neuropathy. Tr. 114-15.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for her disability determination. At step one, the ALJ found that Shipes has not engaged in substantial

---

[6] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

gainful activity since her alleged onset date. Tr. 18. At step two, the ALJ found that Shipes suffers from the following severe impairments: "a neck, back, and leg disorder with a chronic pain syndrome; migraines; a seizure disorder; sleep disorders, depression; anxiety; and a bipolar and/or schizoaffective disorder[.]" Tr. 18. At step three, the ALJ found that Shipes "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 18.

The ALJ proceeded to determine Shipes's RFC, articulating it as follows:

[Shipes] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs; should never climb ladders, ropes, and scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; can frequently feel bilaterally; should never be exposed to unprotected heights, moving mechanical parts, or large open bodies of water; her ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks and some detailed instructions consistent with reasoning level one through three occupations; can interact with supervisors, coworkers, and the public occasionally; and she can deal with occasional changes in a routine work setting.

Tr. 21. At step four, the ALJ utilized the testimony of a VE and determined that Shipes is "unable to perform any past relevant work[.]" Tr. 26. At step five, the ALJ concluded that, "[c]onsidering [Shipes's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 27. These jobs include: "Housekeeper," "Labeler," and "Router." Tr. 28. Accordingly, the ALJ determined that Shipes had not been under a disability from July 6, 2019, through the date of his decision. Tr. 28.

**IV.    ANALYSIS**

Shipes argues that the Commissioner's decision should be reversed for several reasons. First, she contends that the ALJ's RFC determination is inconsistent with his findings of persuasiveness as to some medical opinions. Pl.'s Br. (Doc. 14) p. 1. Next, she asserts that the ALJ improperly discredited the medical opinions of Dr. Esiri Esin ("Dr. Esin"). *Id.* Finally, she argues that the ALJ improperly evaluated her bipolar disorder during the RFC assessment. *Id.* For the following reasons, the ALJ's decision is affirmed.

**A. RFC and Administrative Medical Findings**

Shipes first argues that the ALJ's RFC determination is inconsistent with his evaluations of the persuasiveness of several administrative medical findings. *Id.* at 5. Specifically, she contends that because the RFC finding is less restrictive than the administrative medical findings that the ALJ found persuasive, the ALJ erred. *Id.* at 6-10. Shipes further argues that the ALJ did not explain the differences between his RFC determination and the administrative medical findings, and thus failed to provide a sufficient rationale linking the medical opinions and administrative medical findings to his ultimate RFC determination. *Id.* at 6-10.

The RFC is "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 F. App'x 492, 493 n. 2 (11th Cir. 2010) (per curiam). In other words, "'[a] claimant's RFC is "that which [the claimant]

6

is still able to do despite the limitations caused by [her] . . . impairments.'"" *McMillian v. Astrue*, 2012 WL 1565624, at *2 (S.D. Ala. May 1, 2012) (alterations in original) (quoting *Hanna v. Astrue*, 395 F. App'x 634, 635 (11th Cir. 2010)).

An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite her impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "In assessing RFC, the ALJ must consider any statements about what a claimant can still do 'that have been provided by medical sources,' as well as 'descriptions and observation' of a claimant's limitations from her impairments, 'including limitations that result from [] symptoms, such as pain[.]'" *McMillian*, 2021 WL 1565624, at *3 (alterations in original) (quoting 20 C.R.F. § 416.945(a)(3)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to the RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). Indeed, "[t]he ALJ must state the grounds for his decision with clarity to enable . . . meaningful review." *Hanna*, 395 F. App'x at 636. "'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.'"

*Ricks v. Astrue*, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ*, 363 F. Supp. 2d at 1347).

For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding evaluation of medical evidence, including medical source opinions. 20 C.F.R. § 404.1520c(a). ALJs will no longer "defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" *Id.* When evaluating medical opinion(s) and prior administrative medical finding(s), the ALJ considers the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors the ALJ considers are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Thus, the ALJ must explain how he considered the supportability and consistency factors for a medical source's opinions or prior administrative medical findings in his decision. *Id.* The ALJ may also explain how he considered the other relevant factors. *Id.*

### i. Dr. Veits's Prior Administrative Medical Findings

Shipes contends that the ALJ failed to adequately explain the difference between Dr. Veits's administrative findings, which the ALJ found "generally persuasive" and "well supported," *see* Tr. 26, and the RFC determination, thus failing to provide a sufficient

rationale linking the findings to his RFC determination. Pl.'s Br. (Doc. 14) p. 7. Shipes specifically points to differences in restrictions placed on her abilities to understand and remember instructions, ability to concentrate, and ability to respond to feedback and adjust to changes in her work setting. *Id.*

While the ALJ's RFC determination limits Shipes's "ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks[,]" the ALJ also found that Shipes could perform "routine tasks and some *detailed* instructions[.]" Tr. 21 (emphasis added). This conclusion is different than Dr. Veits's conclusion that Shipes would be limited in her ability to carry out detailed or complex instructions. This difference, however, is not reversible error.

First, simply because an ALJ finds an administrative medical finding persuasive, he is not required to adopt the opinion wholesale. Determining a claimant's RFC is an issue reserved to the commissioner, not a medical professional. *Pate v. Comm'r of Soc. Sec.*, 678 F. App'x 833, 834 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety. *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021); *see also William M. v. Comm'r of Soc. Sec.*, 2021 WL 3077885, at *4 (W.D.N.Y. June 24, 2021) (explaining that determination of the RFC is not a medical determination but an administrative finding which is reserved to the Commissioner, and "the ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision, because the ALJ is entitled to weigh all of the evidence available to make an RFC

finding that is consistent with the record as a whole" (alterations, citations, and quotations omitted)). Therefore, just because an ALJ finds an opinion persuasive does not mean he must incorporate every conclusion of that opinion into the RFC determination.

Additionally, because the ALJ was clear in his application of 20 C.F.R. § 404.1520c(a)-(c), he provided a sufficient rationale linking his RFC determination to Dr. Veits's medical findings. In the portion of his opinion discussing Dr. Veits's findings, the ALJ states that "[c]onsidering the claimant's hospitalization and need for ongoing medication interventions and monitoring, the undersigned finds the claimant has moderate limitation in the paragraph B criteria and that the mental residual functional capacity assessment provided by state agency consultants are generally persuasive and consistent with one another and remain well supported[.]" Tr. 26. The ALJ explicitly stated how persuasive he found the medical findings and whether they were well supported and consistent. He also provided evidence supporting his findings, e.g., Shipes's hospitalization and need for ongoing medication interventions and monitoring. Therefore, the ALJ provided sufficient reasoning to enable this Court to conduct a meaningful review of his decisions regarding Dr. Veits's administrative medical findings.

### ii. Dr. Koulianos's Prior Administrative Medical Findings

Shipes argues that because the ALJ's RFC determination is less restrictive than Dr. Kouliano's administrative medical findings, the RFC is not supported by substantial evidence. Pl.'s Br. (Doc. 14) p. 8. She asserts that "while Dr. Koulianos limited [] Shipes to short instructions, the ALJ limited [] [her] to 'simple and routine tasks and some detailed

instructions.'" *Id.* (quoting Tr. 26). Moreover, Shipes argues that although Dr. Koulianos limited her to being able to concentrate for two-hour periods, the ALJ did not address that limitation. *Id.* (citing Tr. 21).

As mentioned above, in his RFC determination, the ALJ concluded that Shipes's "ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks[,]" and that Shipes could perform "routine tasks and some *detailed* instructions[.]" Tr. 21 (emphasis added). While the RFC is less restrictive than Dr. Koulianos's findings regarding instructions, an ALJ is not required to adopt an entire administrative medical finding that he finds persuasive. *See My-Lein L.*, 551 F. Supp. 3d at 104; *see also William M.*, 2021 WL 3077885, at *4. As such, the fact that the ALJ's RFC determination is less restrictive is not reversible error.

Additionally, the ALJ was not required to explicitly address Dr. Koulianos's finding that Shipes should be limited to concentrating for two-hour periods. Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019) (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Impairments and limitations, however, are not the same thing. *See Jacobs v. Berryhill*, 2018 WL 3323764, at *4 (W.D. Tex. July 6, 2018) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008)) ("[A]n impairment is not the same thing as functional limitations on the ability to work that may be (or not) caused by an impairment."). Thus, while an ALJ is required to consider all impairments, he is not required to consider every possible limitation proposed by the administrative

medical findings. *See Dyer*, 395 F.3d at 1211 (explaining that the ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole). Therefore, the ALJ here did not err when he did not discuss Dr. Koulianos's two-hour concentration limitation.

### iii.   Dr. Parker's Prior Administrative Medical Findings

Shipes argues that the ALJ erred when he found Shipes's RFC determination to be less restrictive than Dr. Parker's opinion. Shipes avers that although Dr. Parker found she was "limited in her ability to feel in both extremities[,]" the "ALJ found [she] 'can frequently feel bilaterally.'" Pl.'s Br. (Doc. 14) p. 9 (citing Tr. 26). Again, an ALJ is not required to adopt an entire administrative medical finding that he considers persuasive. *See My-Lein L.*, 551 F. Supp. 3d at 104; *see also William M.*, 2021 WL 3077885, at *4. As such, the ALJ did not err regarding Dr. Parker's findings.

### iv.   Dr. March's Prior Administrative Medical Findings

Shipes contends that the ALJ erred by reaching an RFC determination that is less restrictive than Dr. March's findings. Shipes avers that while Dr. March "limited [her] to '*no commercial driving*[,]'" the ALJ "failed to mention such limitation in the RFC nor did he reject this portion of Dr. March's [finding]." Pl.'s Br. (Doc. 14) p. 10 (emphasis in original) (citing Tr. 124, 26). Once more, an ALJ is not required to adopt an entire administrative medical finding that he considers persuasive. *See My-Lein L.*, 551 F. Supp. 3d at 104; *see also William M.*, 2021 WL 3077885, at *4. Nor is he required to discuss all limitations in an RFC determination. *See Jacobs*, 2018 WL 3323764, at *4; *Dyer*, 395 F.3d

at 1211. Accordingly, the ALJ did not err in not addressing Dr. March's commercial driving limitation.

## B.  Dr. Esin's opinion

Shipes contends that the ALJ improperly discredited Dr. Esin's opinion. She avers that Dr. Esin's opinion is supported by other medical sources. Pl.'s Br. (Doc. 14) p. 11. Shipes also argues that the ALJ's interpretation of her treating relationship with Dr. Esin is flawed. *Id.* Further, she asserts that Dr. Esin's advanced training in psychiatry makes him competent to evaluate her bipolar disorder. *Id.* at 11-12. These arguments fail.

First, although Shipes contends that Dr. Esin's opinion is supported by other medical sources, the ALJ also cites medical sources in support of his finding that undermine the limitations in Dr. Esin's opinion. He specifically cites to Shipes's treatment notes from Spectracare and finds that they contain very few abnormal examination findings or other limitations that would support the limitations recommended by Dr. Esin. Tr. 25. Thus, because the ALJ cited to treatment records that he found contradicted Dr. Esin's opinion, his supportability determination is based on substantial evidence. *See Cornelius*, 936 F. 2d at 1145 (explaining that a reviewing court should not substitute its judgment for that of the ALJ).

Second, notwithstanding the fact that ALJ's are not required to discuss the treating relationship factor when evaluating medical opinions, *see* 20 C.F.R. § 404.1520c(b)(2), the ALJ considered appropriate factors when evaluating Shipes's relationship with Dr. Esin. In considering the medical provider's relationship with the claimant, the ALJ may consider

length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c). In his opinion, the ALJ explicitly discusses the length, extent, and purpose of the treatment relationship. *See* Tr. 25. Shipes does not argue against the adequacy or appropriateness of these considerations, but merely contends that because Dr. Esin had access to her medical records, the ALJ mischaracterized their treatment relationship. Pl.'s Br. (Doc. 14) p. 11. But, because the ALJ considered the appropriate details for the treating physician factor, his findings concerning the relationship are supported by substantial evidence.

Finally, Shipes's argument regarding Dr. Esin's credentials as a specialist likewise fails. Again, the ALJ considered the appropriate factors when evaluating the treating relationship. While Dr. Esin may be well qualified to evaluate Shipes's psychiatric symptoms, this does not alter the scope of their treating relationship. Moreover, an ALJ is not required to discuss his findings as to a medical source's specialized training. *See* 20 C.F.R. § 404.1520c(b)(2). Therefore, the ALJ's evaluation of Dr. Esin's opinion is supported by substantial evidence.

## C. Evaluating Shipes's Bipolar Disorder

Shipes challenges the ALJ's evaluation of her bipolar disorder on two grounds. First, she asserts that the ALJ did not account for absenteeism from bipolar disorder in his RFC determination. Pl.'s Br. (Doc. 14) p. 12. Second, Shipes argues that the hypothetical the ALJ posed to the VE was incomplete, thus rendering the VE's testimony and the ALJ's

14

reliance upon it not supported by substantial evidence. *Id.* at 15. These arguments are not persuasive.

### i. Absenteeism

Shipes contends that the ALJ's treatment of Dr. Esin's opinion regarding her bipolar disorder is flawed. Pl.'s Br. (Doc. 14) p. 13 (quoting Tr. 25). She also asserts that the ALJ's failure to address Dr. Esin's absenteeism limitation is error. *Id.*

First, as addressed above, the ALJ appropriately evaluated Dr. Esin's opinion. *See* Sec. (B), *supra*. Certainly an ALJ is not required to adopt any specific aspect of a physician's opinion that is found to be unpersuasive. As such, the ALJ did not commit reversible error when he did not consider Dr. Esin's finding that Shipes would miss more than four days per month.

Second, the ALJ's evaluation of Dr. Esin's opinion complies with Eleventh Circuit precedent requiring a longitudinal evaluation of bipolar disorder. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (reasoning that the episodic nature of bipolar disorder must be considered by the ALJ); *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020) (holding that the ALJ erred when he found the claimant's bipolar disorder severe at step two but then "nowhere indicated that medical evidence suggested [the claimant's] ability to work was affected by the impairment"); *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106-07 (11th Cir. 2021) (explaining that the ALJ erred by relying upon "snapshot" reports of stability and progress by treating physicians to

discount their opinions of disability as inconsistent with the medical record). To the extent these precedents control this case, the ALJ has followed them.

In his opinion, the ALJ considered medical records regarding Shipes's mental health and discussed the following: office visit notes from medical providers showing stable mood, good judgment, normal memory, and no concerning behavior; a January 2020 report of increased symptoms, including panic attacks with profuse sweating while being off of her medication for a month; early 2020 treatment notes reporting that she was "doing better" with "stable" psychiatric status and normal mental status exam, including appropriate mood and affect, intact attention and concentration, appropriate thought processes, and good judgment and insight; individual and group therapy notes showing Shipes being active in discussion, stable, and working on ways to manage her depression and anxiety symptoms; Shipes participating in group therapy despite her contentions that she struggles with leaving the house and being around others; a June 2020 group session where she reported that she was struggling to sleep but discussed ways she can take better control of her health and sleep; additional visits to Spectracare where her mental health was considered stable with minimal abnormal examination findings; and treatment notes showing greater mental symptoms, including depression, anxiety/panic, and irritability that pre-dated the alleged onset date. Tr. 24 (citing Exs. C4F, C7F, C8F, C12F, C16F, C21F, C23F).

The ALJ's consideration of these records is certainly more than a mere snapshot of reports. He considered records going back to, and even before, the alleged onset date.

Likewise, he acknowledged in his RFC determination that bipolar disorder would affect Shipes's ability to work. *See* Tr. 21 (The ALJ stating that Shipes's "ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routing tasks and some detailed instructions"). Because he considered evidence both favorable and unfavorable to his determination, the ALJ's consideration of Shipes's bipolar disorder is supported by substantial evidence.[7]

### ii.   VE Hypothetical

Shipes's final argument is that the hypothetical to the VE did not account for the episodic nature of dipolar disorder. Pl.'s Br. (Doc. 14) p. 15. Specifically, she asserts that the hypothetical did not address the absenteeism that could be caused by her bipolar disorder. *Id.*

"While the ALJ need not list every symptom of the claimant, the hypothetical must provide the VE with a complete picture of the claimant's RFC." *Samuels*, 959 F.3d at 1047 (internal quotations and citation omitted). "That is to say, the hypothetical must include the claimant's impairments or otherwise implicitly account for these limitations." *Id.* (internal quotations and citation omitted).

Here, the ALJ accounted for absenteeism in his hypothetical to the VE. During the hearing, the ALJ added to his original hypothetical by inquiring "if [a claimant] missed two or more days of work a month, unexcused[,] would there be any national work they

---

[7] *See Chism v. Astrue*, 2012 WL 2930757, at *2 (M.D. Ala. July 18, 2012) (citing *Cowart v. Scheiker*, 662 F.2d 731, 735-36 (11th Cir. 1981) ("The ALJ must also conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review.").

could do?" Tr. 72. The VE responded that two or more days of absences would be "work preclusive." Tr. 72. This certainly accounts for the episodic nature of bipolar disorder. As such, the ALJ's reliance on VE testimony is supported by substantial evidence.

## V.     CONCLUSION

For the foregoing reasons, it is

ORDERED that the ALJ's decision is AFFIRMED. A separate judgment will issue.

DONE this 9th day of September, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE